**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ELIZABETH SILVA, Petitioner, | ) | Civil Action No. 25-CV-13921-AK |
| v. | ) | |
| MACY'S, INC., Respondent. | ) | |

**MEMORANDUM AND ORDER ON PETITION TO VACATE ARBITRATION AWARD**

**ANGEL KELLEY, D.J.**

Petitioner Elizabeth Silva ("Silva" or "Petitioner") brings the instant Petition to Vacate an Arbitration Award ("Petition") award issued against her in favor of Defendant Macy's Inc. (Macy's). [Dkt. 2]. Petitioner asserts three grounds for vacating the arbitration award, (1) that the arbitrator committed misconduct in refusing to hear pertinent and material evidence, (2) the arbitrator exceeded his powers by applying incorrect legal standards, and (3) the arbitrator acted in manifest disregard[1] of established applicable law. [See id.]. For the following reasons,

[1] While the Court does not reach the merits of the underlying petition, the Court notes that Petitioner likely has no plausible claim for relief. "Even if [the Court were] to assume, for the sake of argument, that the arbitrator's legal conclusions were incorrect, his award plainly was not '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling.'" Mountain Valley, 863 F.3d 863 F.3d 90, 95 (1st Cir. 2017) (quoting McCarthy v. Citigroup Glob. Mkts., Inc., 463 F.3d 87, 91 (1st Cir. 2006). Holding otherwise would require this Court to independently assess the merits of Petitioner's underlying claims, an inquiry expressly prohibited under the FAA. See id. at 95 ("[C]ourts are not in the business of 'hear[ing] claims of factual or legal error by an arbitrator or to consider the merits of an award.'" (second alteration in original) (quoting Poland Spring Corp. v. United Food & Com. Workers Int'l Union, Loc. 1445, 314 F.3d 29, 33 (1st Cir. 2002))).

Petitioner's Motion to Vacate Arbitration Award [Dkt. 2] is **DENIED** and the case is **DISMISSED**.

## I. BACKGROUND

The following facts, which are undisputed unless otherwise noted, are taken from the Parties' submissions and the documents cited therein. This matter arises from an employment arbitration conducted under the parties' arbitration agreement. Petitioner was terminated from Macy's on or about July 12, 2023. Petitioner's termination followed allegations of using racial slurs and creating a hostile work environment. On October 28, 2024, Silva filed a Demand for Arbitration with the American Arbitration Association. She asserted claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Mass. Gen. Laws. ch. 151B.

The Arbitration was governed by the Solutions InSTORE Plan Document, which incorporates the Federal Arbitration Act ("FAA") and allows for dispositive motions. The Arbitrator issued a Scheduling and Case Management Order setting deadlines for summary judgment briefing. Following written discovery and depositions, Respondent moved for summary judgment on July 21, 2025. On August 11, 2025, Petitioner filed her opposition. On August 18, 2025, Respondent filed a reply. On August 25, 2025, Petitioner filed a sur-reply. The Arbitrator held a hearing on September 8, 2025, and thereafter issued the Final Award on September 22, 2025, granting summary judgment and dismissing all claims with prejudice.

During the Arbitration, Petitioner claimed that the investigation preceding her termination was flawed, that comparators were treated more favorably, and that the stated justification for termination was pretextual. Macy's denied all allegations, asserting legitimate, non-discriminatory, and non-retaliatory reasons for termination. The Final Award reflects Arbitrator Shea's review of the record and application of Title VII and Chapter 151B standards

under the McDonnell Douglas burden-shifting framework. The Arbitrator articulated the summary judgment standard, evaluated Petitioner's prima facie case, assessed comparator evidence, and found insufficient evidence to create a genuine issue of material fact. He concluded Macy's was entitled to summary judgment. The Arbitrator dismissed Petitioner's claims with prejudice.

On December 19, 2025, Silva filed the instant Petition and Motion to Vacate Arbitration Award under 9 U.S.C. § 10. She served Macy's on February 5, 2026. Macy's filed an opposition on March 5, 2026, Petitioner filed a reply on March 30, 2026, and Macy's filed a sur-reply on April 14, 2026.

**II. LEGAL STANDARD**

As a general matter, judicial review of an arbitrator's ruling "is extremely narrow and exceedingly deferential, and is indeed among the narrowest known in the law." Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 63 (1st Cir. 2015) (citations and internal quotation marks omitted); see also Teamsters Loc. Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000) ("[D]isputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator. Successful court challenges are few and far between."). As the Supreme Court has explained, this limited judicial review "maintain[s] arbitration's essential virtue of resolving disputes straightaway." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008). If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." Id. (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003)).

There are three grounds on which a court can vacate an arbitration award. First, Section 10(a) of the FAA authorizes vacatur in "cases of 'specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award.'" Hoolahan v. IBC Advanced Alloys Corp., 947 F.3d 101, 111 (1st Cir. 2020) (quoting Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006)). In challenging the arbitrability of a dispute pursuant to Section 10(a), a party does not seek review of the merits of the arbitrator's decision; rather, the inquiry is limited to "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). Such questions of arbitrability are "presumptively for courts to decide" absent "clear and unmistakable evidence" that the parties delegated that question to the arbitrator. Ribadeneira v. New Balance Athletics, Inc., 65 F.4th 1, 19 (1st Cir. 2023) (internal quotation marks omitted); Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 n.2 (2013); see also PaineWebber, Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996). Courts thus review questions of arbitrability de novo. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); PaineWebber, 87 F.3d at 592. However, because of the strong federal policy favoring arbitration, courts resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

In addition to the statutory grounds for vacatur under FAA Section 10(a), the First Circuit recognizes a common law ground for vacatur in cases "where the arbitrator acts with 'manifest disregard of the law.'" Marks v. Wells Fargo Advisors, LLC, No. CV 25-12506, 2026 WL 457749, at *2 (D. Mass. Feb. 18, 2026) (quoting Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc., 863 F.3d 90, 94-95 (1st Cir. 2017)). Similarly, as the final ground for vacatur, a

party may raise a public policy ground for vacatur, under which a court "may vacate an arbitration award if it violate[s] an explicit . . . well defined and dominant public policy, as ascertained by reference to . . . laws and legal precedents." Unión Internacional UAW, Loc. 2415 v. Bacardí Corp., 8 F.4th 44, 51 (1st Cir. 2021) (alterations in original) (internal quotation marks omitted) (quoting Mercy Hosp., Inc. v. Mass. Nurses Ass'n, 429 F.3d 338, 343 (1st Cir. 2005)).

## III. DISCUSSION

The Court denies the petition to vacate the arbitration award for two reasons, (1) the Court lacks subject matter jurisdiction, and (2) the petition is barred by 9 U.S.C. § 12.

### A. Subject Matter Jurisdiction

The Court begins by addressing the issue of subject matter jurisdiction for petitions to vacate arbitration awards. Federal district courts are courts of limited jurisdiction, as defined by statute. Badgerow v. Walters, 596 U.S. 1, 7 (2022). Congress has granted jurisdiction over two primary types of cases: (1) diversity cases—suits between citizens of different states where the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332(a), and (2) federal-question cases—suits "'arising under' federal law, § 1331." Id.

The Supreme Court has clarified that the FAA alone does not provide a basis for federal-question jurisdiction. As the Court stated, "the FAA authorizes parties to arbitration agreements to file specified actions in federal court—most prominently, petitions to compel arbitration (under Section 4) and applications to confirm, vacate, or modify arbitral awards (under Sections 9 through 11). But those provisions, this Court has held, do not themselves support federal jurisdiction." Badgerow, 596 U.S. at 8 (internal citation omitted). If it were otherwise, "every arbitration in the country, however distant from federal concerns, could wind up in federal district court." Id. at 8. (internal citations omitted)

Accordingly, "an applicant seeking, for example, to vacate an arbitral award under Section 10 must identify a grant of jurisdiction, apart from Section 10 itself, conferring 'access to a federal forum.'" Badgerow, 596 U.S. at 8 (quoting Vaden v. Discover Bank, 556 U.S. 49, 59 (2009)). If no independent basis exists, the action belongs in state court. Id.

When reviewing motions to vacate or enforce arbitration awards under Section 9 or 10 of the FAA, a district court must determine whether an independent jurisdictional basis exists beyond the FAA itself. See Badgerow, 596 U.S. at 9. The Supreme Court held that a district court may not "look through" a freestanding Section 9 or 10 petition to identify a federal issue in the underlying dispute to establish jurisdiction. Badgerow; see Jules v. Andre Balazs Props., 146 S. Ct. 1209, 1216 (2026). Even if the underlying arbitration involved a colorable federal law claim, federal jurisdiction does not exist if the petition itself does not present a federal question, or diversity jurisdiction. Badgerow, 596 U.S. at 8-9. "That is because the look-through approach 'locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be.'" Jules, 146 S. Ct. at 1216.

Here, Petitioner asks the Court to do precisely what the Supreme Court forbids. The petition seeks vacatur of an arbitration award under 9 U.S.C. § 10 and relies solely on the FAA for jurisdiction. [Dkt. 1 at 1, 3-4]. Only in her Reply, after Macy's raised the jurisdictional challenge, does Petitioner assert diversity jurisdiction. [Dkt. 19 at 2]. She argues that the parties are diverse and the amount in controversy exceeds $75,000. [Dkt. 19 at 2]. However, none of these facts appear in the petition or the motion to vacate the arbitration award. Petitioner asks the Court to find jurisdiction through conducting the impermissible "look-through" approach barred by the Supreme Court. The Court refuses to do so.

Petitioner's remaining arguments are unavailing. She cites two out-of-circuit cases for the proposition that when a petition itself establishes an independent jurisdictional basis, the Court may adjudicate the petition. While that legal principle is correct, neither case helps Petitioner here.

For example, in Friedler v. Stifel, Nicolaus, & Co., Inc., 108 F.4th 241 (4th Cir. 2024), the Fourth Circuit rejected federal-question jurisdiction based on a claim that an arbitrator manifestly disregarded the law. The court explained that if any party "could merely claim that the panel manifestly disregarded the law as their ticket into federal court, federal jurisdiction over petitions to vacate would be even broader than under the 'look-through' approach that Badgerow rejected." Friedler, 108 F.4th at 250. Petitioner's reliance on this case is misplaced. She explicitly states that the FAA §§ 9-10 is the sole jurisdictional basis in her petition, while claiming that the arbitrator manifestly disregarded the law, that alone cannot create federal jurisdiction.

Likewise, Rabinowitz v. Kelman, 75 F.4th 73, 79 (2d Cir. 2023), does not help her either. There, diversity jurisdiction was apparent on the face of the petition to enforce an arbitration award, which involved a $4,000,000 award and completely diverse parties—one a U.S. citizen, one a U.K. citizen. Id. at 79. The court emphasized that the "[p]etition adequately pleaded such a basis" for jurisdiction. Id. Here, by contrast, no such facts appear in the petition, and no diversity jurisdiction can be inferred without looking through the petition.

Accordingly, because the petition pleads neither a federal question nor diversity jurisdiction, there is no independent jurisdictional basis, the petition is **DISMISSED**. The Court next considers whether the petition is time-barred.

**B. The Petition is Time Barred 9 U.S.C. § 12**

Petitioner next contends that, even if her petition fails to plead an independent basis for jurisdiction, she should be permitted to amend it. However, this argument is foreclosed by 9 U.S.C. § 12. Section 12 of the FAA imposes a strict service deadline. Under Section 12, a "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added).

Here, the final arbitration award was filed on September 22, 2025. Accordingly, Petitioner was required to serve Macy's with notice of her motion to vacate by December 21, 2025. Petitioner filed the instant petition on December 19, 2025, three days before the three-month statutory deadline expired, but did not serve Macy's until February 5, 2026.

Section 12's service deadline is mandatory and strictly enforced. "The FAA 'imposes strict procedural requirements on parties seeking to vacate arbitration awards,' including the strict requirements of service under § 12." O'Neal Constructors, LLC v. DRT America, LLC, 991 F.3d 1376 (11th Cir. 2021). Courts are not lenient with this deadline especially where a petitioner's tardiness is of their own making. See Ballantine v. Dominican Republic, No. 19-CV-3598 (TJK), 2020 WL 4597159, at *5 (D.D.C. Aug. 11, 2020), aff'd, No. 20-7086, 2021 WL 5262555 (D.C. Cir. Oct. 22, 2021) (refusing to apply equitable tolling to petitioner's 9 U.S.C. § 12 service deadline). For example, in Ballantine, the court noted: "[Petitioner] moved to vacate on the last day of the service window, failed to request summonses until after the deadline, and did not even try to complete FSIA service by requesting foreign mailing until about a month later. As a result, they cannot show that they pursued their rights diligently or that 'extraordinary circumstances' prevented them from timely serving the Dominican Republic." Id.

Similarly, Petitioner waited until three days before the service deadline to file her petition and now seeks to excuse her own lack of diligence by blaming the timing of issuance of the summons. However, the timeline is dispositive: Petitioner filed her petition on Friday, December 19, 2025, at 6:45 p.m., after the Clerk's Office had closed. The case was not assigned until Monday, December 22, 2025, one day after the statutory service deadline had already expired. Petitioner attempts to explain the delay in service by asserting that the Court did not issue the summons until January 20, 2026, and therefore she should be excused from the statutory deadline. It is worth noting that after the Court issued the summons on January 20, 2026, Petitioner then waited an additional sixteen days before serving Macy's on February 5, 2026. [Dkt. 8]. Further, even if the Court had issued the summons on December 22nd and Petitioner had served Macy's immediately, service would still have been untimely. The Court finds that Petitioner's delay does not constitute an extraordinary circumstance warranting equitable tolling. Because the petition is untimely under Section 12, amendment would be futile, thus the Court declines to grant leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate Arbitration Award [Dkt. 2] is **DENIED** and this case is **DISMISSED**.

**SO ORDERED.**

Dated: August 19, 2025

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge